People of State of Illinois ex rel. Thomas E. McCabe,
Appellee, v. Walter L. Gregory, James B. Cashin
and William F. Clarke, Civil Service Commis-
sioners of City of Chicago et al., Appellants.

Gen. No. 43,512.

514

Opinion filed April 24, 1946. Released for publication May 10, 1946.

BARNET HODES, Corporation Counsel, for appellants; J. HERZL SEGAL, Head of Appeals and Review Division, FRED V. MAGUIRE, CARL H. LUNDQUIST, and L. LOUIS KARTON, Assistant Corporation Counsel, of counsel.

MICHAEL F. RYAN, of Chicago, for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

On June 4, 1938 Thomas E. McCabe took an examination for the civil service position of ward superintendent in the Bureau of Streets in the Department of Streets and Electricity of the City of Chicago. He passed the examination successfully and when the eligible list was posted by the commission on December 1, 1939, his name appeared thereon as No. 43. On October 21, 1942 he was inducted into the armed forces, under the provisions of the Selective Service Act. On February 26, 1943 he was honorably discharged as a private first class. On January 24, 1945 he made written application to the commission for military preference in certification. At that time 34 certifications had been made from the eligible list. His application for military preference was granted and on January 29, 1945 the commission certified his name to the appointing officer, Lloyd M. Johnson, Commissioner of Streets and Electricity. He was so certified because of the allowance of his request for military preference as a veteran of World War II.

On February 1, 1945 he was appointed ward superintendent of the Bureau of Streets, assigned to the 45th ward by the appointing officer, and entered upon the performance of the duties thereof. On February 4, 1945 the Commissioner of Streets reported the

appointment to the commission, as provided by sec. 13 of the Cities Civil Service Act [Ill. Rev. Stat. 1945, ch. 24½, par. 52; Jones Ill. Stats. Ann. 23.053]. He was paid the salary appropriated for the position for the first payroll period of February 15, 1945 and the second payroll period of February 28, 1945. Without any notice to him, on March 7, 1945 the commission canceled its order granting military preference to him, and canceled its certification of him to the position of ward superintendent to which he was appointed on February 1, 1945, in accordance with the certification of January 29, 1945. On the same day (March 7, 1945) the secretary of the commission, on order of the commission, addressed a letter to Lloyd M. Johnson, Commissioner of Streets and Electricity, notifying him of the cancellation of the military preference granted and directing his separation from the position of ward superintendent. On March 8, 1945 the commissioner reported to the commission that he had separated Mr. McCabe from his position in compliance with the order of the commission, and on the same day the secretary notified him of his separation. He has continuously, from February 1, 1945, performed the duties of the position. On April 24, 1945 the head of the department in which McCabe is employed, submitted a payroll for services rendered by him as ward superintendent from March 1, 1945 to March 31, 1945, which the commission refused to certify for payment. He has not been paid any salary from and after March 8, 1945 because of the order of the commission revoking his certification and ordering his separation. The commission has, since March 8, 1945, continuously refused to recognize Mr. McCabe's right to the position of ward superintendent and has since that date refused to certify and approve the payrolls to the comptroller for the payment of his salary for the duties performed and still being performed by him as ward superintendent. On April 27, 1945 he made a

formal written demand fór payment of back salary, which was refused.

On May 9, 1945 he filed a complaint in the superior court of Cook county against the Civil Service Commissioners, the Commissioner of Streets and Electricity, the Comptroller and the Treasurer, setting up the ultimate facts as above stated, and praying for the issuance of a writ of mandamus, commanding defendants to recognize and pay to him the salary "unlawfully withheld" from him as ward superintendent in the classified service of the Bureau of Streets of the Department of Streets and Electricity of the City of Chicago, and commanding them to do all requisite acts necessary to the end that his name be placed upon the payroll as ward superintendent in the classified service and that he be paid from time to time the salary appropriated for that position. The complaint alleged that it was the duty of the commission under section 10½ of the Cities Civil Service Act [Ill. Rev. Stat. 1945, ch. 24½, par. 49; Jones Ill. Stats. Ann. 23.050] to grant him preference for military service and place his name at the head of the eligible list for the filling of vacancies of ward superintendent, and that after the certification by the commission and the appointment by the commissioner, the commission lost all jurisdiction to revoke his certification and to direct the appointing officer to discharge him. The answer filed for all defendants asserts that plaintiff was not entitled to military preference; denies that the commission was without jurisdiction to revoke his certification, or to direct the commissioner to discharge him; and denies that the action of the commission was illegal. Plaintiff's motion for judgment on the pleadings was sustained, judgment was entered for a writ of mandamus as prayed, and the writ issued. This appeal followed.

Defendants maintain that the commission properly denied military preference to one whose military serv-

ice was rendered after he had taken a civil service examination and the eligible list resulting from the examination had been posted. Plaintiff answers that the commission properly granted military preference for original appointment to relator, whose military service was rendered after he had taken a civil service examination and his name appeared on the eligible list posted therefrom, and that after an appointment has been made on the certification of the commission, the action of the commission in granting military preference in making the certification cannot be canceled or revoked by it. Sec. 10½ of "An Act to Regulate Civil Service of Cities," (par. 49, ch. 24½, Ill. Rev. Stat. 1945) reads:

"Persons who were engaged in the military, or naval service of the United States during . . . any time between September 16, 1940 and the termination of World War II, and who were honorably discharged therefrom, . . . shall be preferred for appointments to civil offices, provided they are found to possess the business capacity necessary for the proper discharge of the duties of such office, and it shall be the duty of the examiner or commissioner certifying the list of eligibles who have taken the examinations provided for in this act, to place the name or names of such persons at the head of the list of eligibles for appointment, provided, however, that this shall not apply to promotions provided for in section 9 hereof, but in such promotions such person or persons shall be given an additional credit in the promotional examination of one per cent (1%) (on the basis of 100%) for each six months or fraction thereof of such military or naval service; and, provided, further that such additional credit shall not be computed so as to increase or decrease the rating allotted to any person competing in such examination for ascertained merits (efficiency) or seniority in service. And provided further, that no person

shall be given such additional credits in the promotional examination for more than eighteen months of such military or naval service.''

Prior to 1943, sec, 10½ included persons who were engaged in the military or naval service of the United States during 1861, 1862, 1863, 1864, 1865, 1898, 1899, 1900, 1901, 1902, 1914, 1915, 1916, 1917, 1918 or 1919. This section was amended by an Act approved May 28, 1943 to include veterans of World War II, which was subsequent to the taking of the examination, the posting of the eligible list and the military service of relator.

The precise question here presented has not heretofore been adjudicated in this State. Defendants cite *O'Brien v. Frazier,* 228 Ill. App. 118; and *People ex rel. Hansen v. Collins,* 266 Ill. App. 24, affirmed by our Supreme Court in 351 Ill. 551, as cases which announce the applicable principles of law. In the *O'Brien* case the commission had granted military preference to three persons lower down than relator on an eligible list which had resulted from a promotional examination for the position of lieutenant in the fire department. The examination had been held October 14, 1914 and the list had been posted in July 1915. The statute was amended in 1919 to include veterans of World War I. It was contended by O'Brien that the statute, as amended, applied only to promotional examinations held after the amendment became effective and that it had no application to persons who had theretofore passed such promotional examinations and whose names appeared on the existing registers at the time of the enactment. Respondents' position was that the amendment applied both to promotional examinations held after the passage of the amendment and to existing registers of eligibles who had taken promotional examinations before the amendment, if such persons had rendered the military or

naval service mentioned in sec. 10½. In sustaining the position of O'Brien, the court said (122):

"The intention of the lawmakers is the law. This intention is to be gathered from the necessity or reason of the enactment and the meaning of the words enlarged or restricted according to their real intent. In determining the meaning of a statute the court will always have regard to existing circumstances, contemporaneous conditions and the object sought to be attained by the statute. *Hoyne v. Danisch,* 264 Ill. 467. It is also the law that statutes will always be construed to operate *in futuro* only and a retrospective effect will not be given unless it clearly appears that such was the intention of the legislature. *Russell & Allison Drain. Dist. v. Benson,* 125 Ill. 490. What was the intention of the legislature in enacting the law in question? Did it intend that these persons who had rendered service in the army or navy and who had taken promotional examinations prior to the amendment of the statute in question should be given the additional credit specified in the amendment, or did it intend that such additional credit should only apply to examinations taken after the date the amendment became effective? We think it applied to the latter only, for in that part of the amendment that applies to promotional examinations it is provided that 'in such promotions such person or persons shall be given an additional credit in the promotional examination of one per cent . . . for each six months or fraction thereof of such military or naval service. . . . *And provided further,* that no person shall be given such additional credits in the promotional examination for more than eighteen months of such military or naval service.' It will thus be seen that the statute expressly provides that the additional credit shall be given to persons entitled thereto in the promotional examinations and the legislature did not have in mind existing registers or lists of persons who

had taken promotional examinations before the amendment. In the case at bar the examination took place in 1914 and the list of names was posted in 1915, four years before the amendment was enacted, and it follows, therefore, that the names on this register should have been certified in their order and not as was done, as shown by the allegations of the petition.''

The *O'Brien* case involved a promotional examination for the position of lieutenant in the fire department. In that case three persons whose names were lower down on the list than O'Brien were certified by the commission for the reason that the commission awarded them additional credit for military service in World War I. Under sec. $10\frac{1}{2}$ they were entitled only to an additional credit in a promotional examination already held. Our view is that the ruling in the *O'Brien* case is applicable only to a credit in a promotional examination and is not applicable to a preference for an original appointment. The *Hansen* case, cited by defendants, did not involve an original appointment. The ultimate question presented was whether the preferences given to veterans are confined to appointments in the classified service and the allowance of additional credits in examinations for promotions, or whether such preferences also include, whenever temporary discharges for work become necessary, retention of veterans in their employment to the exclusion of all other employees in the same class and grade of the civil service, irrespective of their priority of appointment or greater period of service. The Appellate Court said (266 Ill. App. 24, 27): ''The first preference applies to the veteran before he enters the classified service; the second provides for an additional credit to the veteran, upon examinations for promotion, who is already in the service.'' The court held that the legislature did not intend to give preference except in the two instances specified in the Act. In affirming the judgment of

the Appellate Court, the Supreme Court said (351 Ill. 551, 555):

"By section 10-½ of the Civil Service act, persons who were engaged in the military or naval service of the United States during the years enumerated and who meet the other requirements prescribed, 'shall be preferred for appointments to civil offices' and, in examinations for promotions in the classified service, shall receive additional credits upon a basis defined in the section. These two preferences, and none other, are given to qualified veterans by the statute. The first upon which the determination of the issue in this case depends, is 'for appointments to,' not retention in, civil offices. This limitation is emphasized because the same section makes it the duty of the certifying examiner or commissioner to place the name or names of the successful veterans at the head of the list of eligibles certified 'for appointment.' There is neither statutory provision nor implication giving a preference to veterans over other employees who are strangers to the military or naval service, either to retain employment whenever the necessity for temporary discharges from work arises, or to be recalled before such other employees whenever the necessity for temporary releases from employment ceases."

We cannot agree with defendants that these cases support their contention that sec. 10½ is not applicable to the case at bar, where the relator rendered military service after he had taken a civil service examination and after his name appeared on the eligible list posted therefrom. The *O'Brien* case involved a promotional examination, and the *Hansen* case presented the question whether a military or naval preference also included a preference in the retention of veterans in their employment to the exclusion of all other employees in the same class and

grade whenever temporary discharges became necessary.

■ Defendants state that the only provision in the commission's rules relating to military preferences is found in Rule 5, which reads:

"Sec. 5. Military Preference. Persons entitled to military preference in promotion examinations, under the provisions of section 10–½ of the Civil Service Act, shall submit proof of their military service and the duration of same, to the Commission. The credit allowed by the Civil Service Act for military or naval service shall be added to the general average standing of the persons entitled to same whose names shall appear upon promotion eligible registers, having attained the required percentage of complete proficiency in examination, ascertained merit of efficiency and seniority taken as a whole."

This rule obviously does not apply. It is limited solely to additional credits to be allowed veterans in promotional examinations. The military preference granted by the commission to relator for original appointment arose from the provisions of the first part of sec. 10½ of the Cities Civil Service Act. This section grants two kinds of preferences. The first part of the section expressly grants military or naval preference for original *appointment*. The latter part of the section grants additional credits in a promotional *examination*, of 1 per cent on the basis of 100 per cent for each six months or fraction thereof of such military or naval service. In a promotional examination the additional credit is given on the basis of a fixed percentage predicated upon the length of military or naval service of a person *already in the service*. The preference given for those coming into the classified service after taking an original entrance examination is one where they are "preferred for appointments . . . provided they are found to possess the business capacity necessary for the proper discharge of

the duties of such office." To insure such preference it is the duty of the examiner or commissioner in making certification "to place the name or names of such persons at the head of the list of eligibles certified for appointment." The statute gives preference for original appointment and provides that it shall not apply to promotions provided for in sec. 9. In the latter part of the statute there is no military preference for appointment, but only the allowance of an additional credit. The second part, allowing for this additional credit in promotional examinations, limits the additional credits in the promotional *examinations* to not more than 18 months of such military or naval service. The first part gives veterans preference for original appointment. The second does not, but gives *additional credit in the promotional examination,* fixing the basis of that credit and limiting it to not more than 18 months of service. In our opinion the commission properly allowed military preference to relator for military service after he had taken the civil service examination and after the eligible list resulting therefrom had been posted.

Plaintiff had service in the military forces, obtained an honorable discharge and had been "found to possess the business capacity necessary for the proper discharge of the duties," in that he had, prior to his military service, qualified by a civil service examination to perform the duties and was otherwise eligible in the order of his relative standing on the eligible list to be appointed to the position. His military service thereafter only accelerated his right to be appointed by requiring the commission to prefer him for appointment by placing his name at the head of the eligible list for certification for appointment. It is first necessary for the veteran to get on the eligible list before he is entitled to preference. Subsequent thereto he received his honorable discharge. For those coming into the service by original appointment, preference is not granted in the examina-

tion. Preference is granted in the appointment. It was clearly the intention of the legislators by the amendment to sec. 10½, to include veterans of World War II to receive preference for appointment. The legislature intended to accord to the men and women of our armed forces who were honorably discharged, on their return to civilian life, a reward for their services in time of war. Relator had passed the civil service test and he was found to possess the business capacity necessary for the proper discharge of the duties of the office. We are of the opinion that sec. 10½, as amended in 1943, grants military or naval preference for original appointment to one whose military or naval service was rendered after he had taken a civil service examination and his name appeared on the eligible list posted therefrom, and when such service was rendered previous to the effective date of the amendment. The commission properly granted military preference to relator.

A further point urged by defendants is that the commission had power to revoke a certification which it had made illegally. Relator maintains that the commission can neither cancel its certification of an eligible after appointment has been made thereon, nor refuse to certify for payment a payroll on which the name of the appointee appears. The respective parties rely on the case of *People ex rel. Laist v. Lower,* 251 Ill. 527. In that case, after the commission had certified Laist as an architect to the Commissioner of Public Works, the commission revoked the certification because he was not a licensed architect. The commissioner refused to appoint him on the ground that the commission's certificate had been revoked. The court said (529):

"It is true that an appointment is complete when the last act required of the appointing power has been performed, and the authority to make the appointment has then been exhausted. In such a case the appointing power cannot revoke the appointment, and the

one appointed can only be removed by lawful authority. In this case, however, the relator was not appointed city architect and the civil service commission made no attempt to appoint him to that position. The commission has no power to appoint to any office or position, but the power to appoint is in the head of the department or office in which a position classified under the Civil Service Act is to be filled. There was no attempted revocation of an appointment since none had been made, but when it was learned that the certificate had been improvidently made and the relator was lacking in a necessary qualification for appointment, it was within the power of the civil service commission to correct its mistake by withdrawing the certificate.''

There was no fraud, deception or mistake in the certification and appointment of relator. Under the circumstances presented by the record the commission was without power to cancel its certification of Mr. McCabe.

For the reasons stated, the judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

KILEY, P. J., and LEWE, J., concur.