(No. 31147.

THE PEOPLE *ex rel.* Stephen E. Hurley *et al.,* Petitioners, *vs.* JOSEPH A. GRABER *et al.,* Respondents.

*Opinion filed January 18, 1950—Rehearing denied March 20, 1950.*

BENJAMIN S. ADAMOWSKI, Corporation Counsel, (L. LOUIS KARTON, CARL H. LUNDQUIST, and SYDNEY R. DREBIN, of counsel,) all of Chicago, for petitioners.

EDMUND D. ADCOCK, and MURPHY, PEARSON & O'CONNOR, both of Chicago, for respondent Joseph A. Graber; MICHAEL F. RYAN, and SHEEHAN & EGAN, of Chicago, (RICHARD F. McPARTLIN, JR., of counsel,) for respondent Cornelius J. Harrington.

ROLAND V. LIBONATI, and LANE, DUFFY & CONNELL, both of Chicago, (EUGENE F. CONNELL, and THOMAS J. DUFFY, of counsel,) for *amicus curiae*.

DAVID H. CAPLOW, of Chicago, for intervening petitioner.

Per CURIAM : The People of the State, on the relation of the three members of the civil service commission of the city of Chicago, the commissioner of police, the comptroller and the treasurer of the city of Chicago, filed in this court an original petition for a writ of *mandamus,* directing the defendants, Hon. Joseph A. Graber, a judge of the superior court of Cook County, and Hon. Cornelius J. Harrington, a judge of the circuit court of Cook County, to expunge from the records of the superior court an order directing that a writ of prohibition issue against the petitioners who were defendants in People ex rel. Steinway *et al.* v. Hurley *et al.* and to expunge from the records of the circuit court two orders enjoining the members of the civil service commission from demoting the plaintiffs in McLaughlin v. Hurley *et al.* and Golden *et al.* v. Hurley *et al.*. The defendants interposed answers to the petition, the answers have been ordered to be considered as demurrers to the petition, and, upon these pleadings, the cause is submitted.

Fred Casey and eleven others appear as *amici curiae* in support of the position of the petitioners. Terence J. Ryan, a sergeant in the Chicago police department, past commander of Police Post 207, American Legion, Department of Illinois, on behalf of himself as a party in interest and representative of a class in interest, has filed an intervening

petition and appears as *amicus curiae* in behalf of the position of defendants.

In *People ex rel. Duffy* v. *Hurley*, 402 Ill. 562, on March 24, 1949, two amendments to section 10½ of the City Civil Service Act, designated as Senate Bill 625 and Senate Bill 692, approved on July 21 and August 8, 1947, relating to giving preference and advantage to persons under civil service who had rendered military service in past wars, (Ill. Rev. Stat. 1947, chap. 24½, par. 49,) were held to constitute an invalid delegation of legislative power because of vagueness, indefiniteness, and uncertainty in the application of military service credits to persons on promotional lists of cities operating under the act, leaving the application of various methods of computing the value of the military credit to administrative officers. Tracy Duffy was a police sergeant in Chicago who successfully passed the examination for the position of police lieutenant in May, 1941. He placed number 128 on the promotional eligible list and, by September 9, 1947, had advanced to number 9. On the day last named, as a result of military credits given to others on the list, certain eligibles were advanced and Duffy, a nonveteran, was lowered to position number 17. Thereafter, Duffy instituted a *mandamus* action in the circuit court of Cook County, alleging the constitutional invalidity of the amendments added to section 10½ of the City Civil Service Act in 1947 and sought an order commanding the civil service commission and the police commissioner of Chicago to restore him to his proper relative standing on the list. Judgment was rendered awarding a writ of *mandamus,* as prayed, and, upon appeal, we affirmed the judgment. Subsequently, in obedience to the mandate of this court, Duffy was restored to his previous standing on the list of eligibles and has since been promoted to the rank of lieutenant on the police force.

The petition for *mandamus* alleges that, conformably to our mandate in the *Duffy case,* the members of the

civil service commission, hereafter referred to as petitioners, revised the existing promotional registers by taking from the war veterans, whose names appeared on the existing eligible promotional registers, the military credit provided for in section 10½ of the City Civil Service Act, as amended, and advancing those persons who were not entitled to military credit; that, from the existing eligible promotional registers, as last revised, the petitioners have certified the three applicants for each vacant promotional position having the highest grade and those persons have been appointed by the appointing power and are now occupying positions in the classified civil service of the city; that, insofar as the police department is concerned, all positions are occupied and no vacancies presently exist in any of the promotional positions in the department; that there are innumerable persons whose names appear on existing promotional eligible registers who are entitled to certification and appointment in the classified civil service, as provided for in the statute and the rules and regulations of the civil service commission, but who cannot receive certification and appointment because the positions are occupied by persons who are certified and appointed by virtue of being afforded military credit prior to our decision in the *Duffy case*.

On April 19, 1949, the corporation counsel of the city of Chicago rendered an opinion in response to a request from the civil service commission "as to whether under existing law this Commission may recognize or allow any military credit to anyone in respect of any such promotional list theretofore or hereafter posted by it, and, if so, how and under what circumstances." This opinion was to the effect that our decision "in striking down military preference on promotional lists is broad enough in its terms to affect the military credit provisions relating to promotional examinations which appeared in the original section 10½ of the Cities Civil Service Act," and that, accordingly, peti-

tioners were required to refuse to recognize or allow any military credit to anyone with respect to promotional lists in the classified civil service; that the commission must proceed on the theory that those persons who have been promoted as a result of the unlawful award of military credit have no rights in the positions to which they have been promoted, can claim no protection in those positions, and have acquired no status therein, and that both the commission and the commissioner of police must take the necessary steps to remove from these promotional positions such persons as have been unlawfully appointed and appoint thereto the persons who would be rightfully entitled to them without military credit; that an employee so separated from the promotional position should be restored to the eligible list at the point where his grade in the examination, exclusive of any military credit, would place him, and that the employee should be restored to the position in the next lower rank or grade last previously held by him.

On April 18, 1949, one day prior to the rendition of the opinion of the corporation counsel, Lester J. Steinway and other sergeants of police filed in the superior court of Cook County a petition, and thereafter an amended petition with additional plaintiffs who were sergeants and lieutenants, for a writ of prohibition to prohibit and restrain the petitioners from demoting them from their respective positions in the classified service in the department of police. An order was entered on April 29, 1949, prohibiting and restraining petitioners from taking any action to demote or cause to be demoted Steinway and nineteen others from their positions as sergeants and Irving C. Alexander and three others as lieutenants in the classified service of the department of police.

Petitioners charge that Judge Graber lacked the power or jurisdiction to enter the orders directing the issuance of the permanent writ of prohibition for the reasons, among others, that the civil service commission is an ad-

ministrative body, a part of the executive department of the city of Chicago; that the petitioners, under the City Civil Service Act and the rules and regulations of the commission, have complete and absolute power and jurisdiction over all the civil service employees of the city and, in consequence, have the power to demote the plaintiffs named in the amended petition for writ of prohibition who have been promoted to their positions as the result of the unlawful award of military credit.

On April 19, Thomas J. McLaughlin filed in the circuit court of Cook County a complaint for injunction, seeking an order restraining petitioners, the commissioner of police, the comptroller and the city treasurer, from demoting him from his position as captain of police. On April 22, John J. Golden, Thomas H. McCann, James C. Kelly and Edward Barcal filed in the circuit court a complaint for injunction seeking like relief, namely, an order restraining the demotion of Golden and McCann from their positions as lieutenants of police and Kelly and Barcal from their positions as sergeants. On April 26, Judge Harrington entered orders directing the issuance of the temporary injunctions during the pendency of the actions and, in the Golden case, "until they are removed as provided by law."

The petition for *mandamus* alleges that nine other complaints for injunction and petitions for writs of *mandamus* have been filed in the circuit and superior courts of Cook County against the six petitioners here. An additional allegation is made that there are still pending and undisposed of in the circuit and superior courts three other petitions for writs of *mandamus* against the six petitioners. It is alleged, further, that, on May 5, 1949, notices were served on them in three cases in the superior and circuit courts, representing an aggregate of nineteen plaintiffs, stating their intentions to file petitions for a rule to show cause why petitioners should not be held in contempt of court for failure to comply with writs of *mandamus* here-

tofore issued and for failing to cancel military credit unlawfully given and to certify and appoint the plaintiffs in the respective actions.

Concluding allegations are that, by reason of these orders, the petitioners have been prohibited by the writ of prohibition from demoting persons previously promoted as a result of military preference; that they have been restrained by the issuance of injunctions from demoting persons heretofore promoted as a result of the grant of military preference; that, on the other hand, they have been ordered by writs of *mandamus* to certify and appoint persons and are now threatened with contempt proceedings for failure to demote persons unlawfully promoted with military credit, and that it is impossible for them to obey all of these orders. For these and other reasons, petitioners sought a writ of *mandamus* in this court.

By his answer, the defendant Judge Graber, avers that the civil service commission, having certified persons for promotion, and these persons having been appointed by the legally constituted appointing officer to the positions, their appointments became final, complete, irrevocable and not subject to reconsideration, and that, thereafter, the commissioners had no power, authority or jurisdiction to demote these persons, the occupants of promotional positions in the department of police, except for cause, upon written charges and after a hearing, conformably to section 12 of the Civil Service Act. Answering further, said defendant avers that the civil service commission is a *quasi*-judicial body and exercises, or threatens to exercise, *quasi*-judicial functions. Referring to the allegations of the petition for *mandamus* as to the power of a judge of the superior court to issue writs of prohibition, the averment is made that the members of the commission in their motion to strike the petition for writ of prohibition, stated, "It is the intention of the defendants to revise the sergeants eligible list by eliminating military credit and, if necessary, demote those

sergeants who have been certified and appointed to their positions by reason of their application of military credit and appoint in lieu thereof the persons who would be rightfully entitled to the positions without military credit." Defendant asserts the power of the commission over the civil service employees of the city of Chicago is limited to those delegated by the General Assembly and set forth in the City Civil Service Act, as amended. Said defendant denies that the present petitioners have no remedy for the various orders referred to in the petition for *mandamus*, stating that they had the right to appeal from any and all such orders and that the validity of each and every order could be tested upon appeal. Concluding averments of Judge Graber's answer are that the superior court of Cook County, and he as one of of its judges, has general original jurisdiction to entertain and award writs of prohibition; that members of the civil service commission of the city of Chicago, in addition to performing administrative duties, exercise *quasi*-judicial functions and constitute a *quasi*-judicial body; that they have no right, power, jurisdiction or authority to demote any member of the classified civil service of the city; that the right to occupy a public office in the classified civil service of the city is a personal right which the courts of law have jurisdiction to protect by appropriate common-law writs; that a threat publicly made by a *quasi*-judicial body to act in a matter or manner in which it has no jurisdiction, power or authority to act affords a sufficient basis for a court of law to assume jurisdiction by a writ of prohibition to prevent the threat and acts being effected; that each of the plaintiffs in the cause before him, upon being duly appointed to his promotional position and entering into the duties thereof, was removed from his position of lower rank in the department, and that, under the provisions of the City Civil Service Act, the commission has no power, jurisdic-

tion or authority to demote, or to reinstate, them in their former positions of lower rank in the department of police.

The answer of the defendant Judge Harrington is substantially to the same effect. The averment, among others, is made that, upon the hearing of McLaughlin's motion for a temporary injunction, an assistant corporation counsel appeared in open court and stated that the petitioners intended to remove McLaughlin as captain of police by a "blanket order" of the civil service commission wherein they would "demote" all persons certified and appointed to their incumbent positions by reason of being granted additional credits for military service. Referring to the four plaintiffs, Golden, McCann, Kelly and Barcal, in the other complaint for injunction, said defendant averred that no charges had been filed or were pending against them; that they had not been removed under the provisions of section 12 of the City Civil Service Act; that the president of the civil service commission announced publicly and to the press that, because of the decision of this court in the *Duffy case,* the commission would order the demotion of those members of the police department who had been promoted to higher ranks due to the awarding to them of additional credits for military service and advanced on the eligible list because thereof; that these police officers had not been guilty of any fraud or deception in the promotions made; that the commission, being a statutory body, exercises purely statutory powers, and must find in the applicable statute its warrant for the exercise of the authority claimed, and that there is no provision in either the Civil Service Act or the rules of the commission itself giving any authority, power or jurisdiction to the commission to revoke a certification after an appointment has been made, or to order the demotion of a person from his position in the classified service. Other averments are that, if illegally ousted, the police officers would be compelled to resort to

long, cumbersome litigation with a multiplicity of actions by themselves and others seeking their restoration and back salary. For these and other reasons, the answer of Judge Harrington states that he entered orders temporarily enjoining petitioners from removing McLaughlin as captain of police, Golden and McCann as lieutenants, and Kelly and Barcal as sergeants, contrary to the Civil Service Act and the rules of the commission, until they are removed as provided by law.

We shall consider, first, the issue made by the pleadings and argued exhaustively in the briefs of the parties and *amici curiae* whether the civil service commission is vested with authority and jurisdiction to demote police officers who have passed promotional examinations, been certified as civil service employees, regularly appointed by the proper appointing officers to positions in the department of police, and entered upon the duties of their respective positions. Recourse to the applicable provisions of the City Civil Service Act becomes necessary.

Section 1 of "An Act to regulate the civil service of cities," (Ill. Rev. Stat. 1949, chap. 24½, par. 39,) provides for the appointment of three civil service commissioners. Section 3 directs them to classify all the offices and places of employment with reference to examinations. Sction 4 grants authority to the commission to make rules to carry out the purposes of the act, and for examinations, appointments and removals in accordance with its provisions. Section 6 relates to the examination of applicants. Section 7 deals with the publication of notice of time, place, and general scope of every examination. Section 8 provides for the preparation of registers of eligibles for each grade or class of positions in the classified service of the city. Section 9, covering the subject of promotions, declares, "The commission shall, by its rules, provide for promotions in such classified service, on the basis of ascertained merit and seniority in service and examination and shall provide,

in all cases where it is practicable, that vacancies shall be filled by promotion." Section 10 commences, "The head of the department or office in which a position classified under this act is to be filled shall notify said commission of that fact, and said commission shall certify to the appointing officer the name and address of the candidate standing highest upon the register for the class or grade to which said position belongs * * * . * * * The appointing officer shall notify said commission of each position to be filled, separately, and shall fill such place by the appointment of the person certified to him by said commission therefor, which appointment shall be on probation for a period to be fixed by said rules. * * * At or before the expiration of the period of probation, the head of the department or office in which a candidate is employed may, by and with the consent of said commission, discharge him upon assigning in writing his reason therefor to said commission. If he is not then discharged, his appointment shall be deemed complete." Section 10½, as narrated, makes provision for preference to persons previously engaged in the military or naval service of the United States. Section 11 exempts certain elective and other officers from inclusion in the classified service. Section 12, so far as relevant, ordains: "Excepting and as hereinafter provided in this section, no officer or employee in the classified civil service of any city who shall have been appointed under said rules and after said examination, shall be removed or discharged except for cause, upon written charges and after an opportunity to be heard in his own defense. Such charges shall be investigated by or before said civil service commission, or by or before some officer or board appointed by said commission, to conduct such investigation. The finding and decision of such commission or investigating officer or board, when approved by said commission, shall be certified to the appointing officer, and shall forthwith be enforced by such officer."

Section 14 provides that the commission shall investigate the enforcement of the statute and of its own rules. Section 30 provides that the commission shall certify to the comptroller or other auditing officers all appointments to offices and places in the classified civil service.

Conformably to the statutory authority granted, the civil service commission has promulgated its own rules. Section 6 of rule II relating to applications and disqualification of applicants reads, "Proof of false statements made in any applications, or of bad character, dissolute habits, immoral conduct, or of dismissal for cause from any public service shall be grounds for excluding an applicant from any examination, or for removal from an eligible register, or for dismissal from the service after certification, provided that any such applicant or eligible or appointee shall be given an opportunity to be heard in his own defense before final action by the Commission." Obviously, this rule is inapplicable to the factual situation presented.

An aid in the construction of section 12 of the City Civil Service Act is provided by section 12 of the State Civil Service Act. (Ill. Rev. Stat. 1947, chap. 24½, par. 14.) Section 12 formerly provided, "Any appointing authority may remove, discharge or demote any officer or employee in the classified civil service of the State for just cause. The term 'just cause' as herein used means any cause which is detrimental to the public service. An appointing authority in making a removal, discharge or demotion shall set forth the cause therefor in writing, which shall be signed by him and made in duplicate upon forms furnished by the Civil Service Commission." The corresponding section of the City Civil Service Act relating to removals provides only for the removal or discharge and not, as did the State Civil Service Act, prior to its recent amendment, for removal, discharge or demotion. As section 12 of the State Civil Service Act now obtains it

provides for removal, discharge or suspension but not for demotion. Ill. Rev. Stat. 1949, chap. 24½ par. 14.

The City Civil Service Act contains no provision granting power to the civil service commission to reconsider an appointment or to demote for cause after the employment or appointment is completed, as here, by the act of the commissioner of police in making an appointment upon certification by the commission of the applicants having the highest grading or rating. The city civil service commission exercises a limited or statutory jurisdiction, no presumption of jurisdiction obtains in its favor, and it must find in the statute its warrant for any authority claimed. (*Funkhouser* v. *Coffin,* 301 Ill. 257; *People ex rel. Gilbert* v. *Hurley,* 336 Ill. App. 205.) In *People ex rel. Carroll* v. *Durkin,* 280 Ill. App. 510, commenting upon the differences then obtaining between the State Civil Service Act and the City Civil Service Act, the Appellate Court observed: "It is clear, from a reading of the two acts, that the State Civil Service Act differs widely from the Civil Service Act in relation to cities. Under the latter act charges against the employee are preferred before a civil service commission, where a full hearing is had. The commission is a *quasi*-judicial tribunal and the statute provides that an employee may be removed only 'for cause, upon written charges, and after an opportunity to be heard.' The power to remove is not an arbitrary one, to be exercised at pleasure, but only upon just and reasonable grounds."

The plaintiffs in the petition for writ of prohibition were appointed to their positions in the police department commencing on April 16, 1948, and extending to November, 1948, and have held their positions since the dates of their appointments. The petition for *mandamus* discloses that a majority of these plaintiffs were appointed by the commissioner of police on April 16, 1948. The commission certified these plaintiffs to the commissioner of police as

having the highest rating as applicants for the positions to which they were appointed, took them from the registers for their respective grades or class of positions, their grades were determined by adding credits for military service, and the commissioner appointed them to their positions from the list certified by the commission to him as eligible for appointment to their respective positions. In accepting the certifications upon which they were appointed to their present positions, the plaintiffs were permanently separated from the positions formerly held by them. They could not be demoted to their former positions, not only because they had been permanently separated therefrom, in accordance with section 2 of rule IV of the commission, but for the additional reason that their former positions had been filled and occupied by others. Their appointments were then complete, and the officers vested with appointive power thereafter lacked power or jurisdiction either to reconsider the appointments or to demote the plaintiffs for the adequate reason that the statute from which the city civil service commission derives its authority does not delegate power to the commission to demote once an appointment is complete. (*People ex rel. Laist* v. *Lower,* 251 Ill. 527; *People ex rel. McCabe* v. *Gregory,* 328 Ill. App. 513.) As aptly stated long ago by Chief Justice Marshall in *Marbury* v. *Madison,* 1 Cranch, 137, "Some point of time must be taken when the power of the executive over an officer, not removable at his will, must cease. That point of time must be when the constitutional power of appointment has been exercised. And this power has been exercised when the last act, required from the person possessing the power, has been performed."

In *People ex rel. Laist* v. *Lower,* Laist was certified to the department of public works of the city of Chicago, conformably to the City Civil Service Act, to fill a vacancy in the office of city architect. Laist had received the highest rating at an examination conducted by the civil service

commission. He reported for duty at the department of public works, claimed the right to the office of city architect, but the commissioner refused to allow him to assume the office because the commission, in the meantime, had revoked its certificate upon the ground that Laist was not a licensed architect. It appears that Laist had passed the special board-room examination for a license to practice architecture, and received a certificate to this effect. The certificate stated that it did not authorize him to practice architecture, and that, upon payment of the required license fee to the secretary of the State Board of Examiners of Architects a license would be issued to him. Laist filed in the circuit court of Cook County his petition for a writ of *mandamus,* directing the civil service commission to certify him for appointment as city architect. A demurrer to the petition was sustained, and the petition dismissed. Upon appeal, this court, speaking through Mr. Justice Cartwright, observed: "One ground for claiming that the court erred in sustaining the demurrer is, that the appointment of the relator as city architect was complete when he was certified to the commissioner of the department of public works, and as he was not removable by the appointing power, his appointment was irrevocable and could not be annulled by revoking the certificate. It is true that an appointment is complete when the last act required of the appointing power has been performed, and the authority to make the appointment has then been exhausted. In such a case the appointing power cannot revoke the appointment, and the one appointed can only be removed by lawful authority."

In *People ex rel. McCabe* v. *Gregory,* 328 Ill. App. 513, the plaintiff, McCabe, passed an examination for a civil service position in the Bureau of Streets in the Department of Streets and Electricity, and, after subsequent service in the armed forces of the United States, was given military preference in certification on the eligible list, and,

in due course, appointed ward superintendent of the Bureau of Streets and entered upon the performance of the duties assigned to him. The Appellate Court, placing reliance upon *People* v. *Lower,* 251 Ill. 527, held that the commission was thereafter without power to cancel its certification, there being no fraud, deception or mistake in the certification. In the present proceeding, the plaintiffs in the cases before Judges Graber and Harrington were appointed pursuant to the applicable law as it then obtained and there is no claim, even now, of any fraud, deception or mistake in the certification and appointment of any of them.

Petitioners place reliance upon *Fitzsimmons* v. *O'Neill,* 214 Ill. 494; *Stryker* v. *Board of Education of City of New York,* 294 N.Y.S. 66, and *Hurley* v. *Board of Education of City of New York,* 270 N. Y. 275, saying, "The *Fitzsimmons* and *Stryker cases* are direct authority for our contention that the Civil Service Commission does not have to find the power under the Cities Civil Service Act to demote civil service employees who were promoted by reason of the application of military credit under the void and unconstitutional Amendments. They are also authority for our contention that the Commission still retains the reservoir of power over all civil service employees, subject to the statutory requirements of a hearing before discharging an employee for a *cause* pertaining to him personally, as an individual. These cases are also authority for our contention that the Commission is only limited to the provisions of Section 12 of the Act in its removal of a civil service employee from his position." The assertion that the power of the commission over employees of the city of Chicago is complete except to the extent the City Civil Service Act serves as a restraint upon their pervasive power is not a correct statement of the law. The commission's powers are delegated and its authority must find its source in the City Civil Service Act. After his appointment, the commission is vested with power to discharge a

civil service employee for cause, conformably to the provisions of section 12 of the City Civil Service Act, or to approve the action of the head of a department in discharging a candidate, by and with the consent of the commission, upon assigning, in writing, his reasons therefor to the commission, during the probation period prescribed by section 10. The power to act in these cases is in the head of the department and, in the present situation, in the commissioner of police. On the other hand, the commission lacks power to discharge a civil service employee because an office is abolished or for lack of work. *Fitzsimmons* v. *O'Neill,* 214 Ill. 494, holds that section 12 does not apply to removal from office consequent upon the abolishment of the office itself in good faith and in the interest of economy. In the present case, there is no issue presented with respect to the abolishment of a civil service position. The same observation applies to *People ex rel. Jacobs* v. *Coffin,* 282 Ill. 599, where this court held that while a city operating under the City Civil Service Act may, in good faith, discontinue any position or employment which has become unnecessary, neither the city nor the commission may temporarily abolish a position in order to oust the person employed and re-establish it later with another person as employee. In *Moon* v. *The Mayor,* 214 Ill. 40, and *Howard* v. *Mueller,* 252 Ill. App. 10, the chief of police and the superintendent of police removed police officers in the classified service when they found that no ordinances existed creating the office of policeman. There being no issue before us with respect to the creation of an office, *Howard* v. *Mueller* and *Moon* v. *Mayor,* and also, *Bullis* v. *City of Chicago,* 235 Ill. 472, are not in point.

Here, the civil service commission proposed to demote employees in the civil service despite the fact that it has neither express nor implied authority under the applicable statute so to do. It has the power and authority, under section 12, to remove for just cause but we find no provision

in the statute affording a basis for demoting a civil service employee regularly appointed to a civil service position for the sole reason that the statutory provisions granting military credits has, since the appointment, been adjudged unconstitutional. The proposed action is contrary to section 10 of the statute which ordains, "At or before the expiration of the period of probation, the head of the department or office in which a candidate is employed may, by and with the consent of said commission, discharge him upon assigning in writing his reason therefor to said commission. If he is not then discharged, his appointment shall be deemed complete." In short, after the period of probation ends, the appointment is complete. Where, however, as here, promotional appointments are involved, there is no period of probation, because section 5 of rule IV of the civil service commission merely prescribes a probation period of six months for an original appointment. It follows, necessarily, that where a promotional appointment is made the appointment is complete upon the exercise of the appointive power by the head of the department.

The New York cases relied upon by petitioners aid them but little for the reason, among others, that the New York Civil Service Law expressly provides for demotions. Baldwin's Consolidated Laws of New York, article 2, section 14, subdivision 8. Our City Civil Service Act grants no such authority.

The question remains as to whether the superior court of Cook County had jurisdiction to entertain a petition for writ of prohibition. The civil service commission is, as petitioners maintain, of course, an administrative body, an arm of the executive. This does not mean, however, that its actions are not subject to judicial review, particularly where such actions are charged to be beyond the authority and power of the commission itself. The city civil service commission may also be correctly described as *quasi*-judicial in character. (*Powell* v. *Bullis,* 221 Ill. 379; *People ex rel.*

*Carroll* v. *Durkin,* 280 Ill. App. 510.) In *Powell* v. *Bullis,* 221 Ill. 379, this court referred to the civil service commission of the city of Chicago specifically and to all inferior tribunals in this State as exercising judicial or *quasi*-judicial powers when they exceed the limit of their jurisdiction. See *Bartunek* v. *Lastovken,* 350 Ill. 380, for a like observation with respect to the police and fire commission of the city of Berwyn. In *People ex rel. Carroll* v. *Durkin,* 280 Ill. App. 510, the city civil service commission is described as a *quasi*-judicial tribunal. In *Peabody* v. *Sanitary District of Chicago,* 330 Ill. 250, this court said, "Official action is judicial where it is the result of judgment or discretion." Although a writ of prohibition does not ordinarily issue to control administrative, ministerial or nonjudicial acts and functions beyond the common-law scope of the writ, if the action sought to be prohibited is judicial in its nature, it may be prevented by the writ of prohibition, although the tribunal or person to whom the writ is addressed is not in name a court or judge. "Thus, the writ lies not only to inferior judicial tribunals, but also to inferior ministerial tribunals, possessing incidentally judicial powers and known as *quasi*-judicial tribunals." (42 Am. Jur., Prohibition, sec. 14.) Or, stated somewhat differently, "when an administrative or executive board or tribunal is acting in a judicial or *quasi*-judicial capacity, prohibition will lie where it is acting without jurisdiction or in excess of its jurisdiction." 50 C.J., Prohibitions, sec. 41.

Prohibition is an available remedy to restrain the commission from demoting the plaintiffs, Steinway and others, in the cause before Judge Graber. Ordinarily, the civil service commission exercises administrative powers. Its jurisdiction is administrative in nature when it proceeds in accordance with the statute. When, however, as here, it proposes and, indeed, publicly proclaims its intention to demote persons whose appointments to positions in the classified service have become complete, or to reconsider

and vacate their appointments, it is acting beyond its authority. Its proposed action required the exercise of judgment and discretion not delegated to it. A writ of prohibition does not lie against the civil service commission to prohibit and restrain it from authorized action in the exercise of the jurisdiction granted it by statute, but the writ will issue where the commission attempts to demote and deprive persons in the classified service of their positions without authority, statutory or otherwise, so to do.

The superior court of Cook County is a court of general jurisdiction and, accordingly, has jurisdiction to hear and try prohibition actions. The court had jurisdiction of the persons of both the plaintiffs and defendants in the proceeding. It is unnecessary to determine whether its decision was correct or incorrect. Where a court has jurisdiction of the subject matter and of the parties and possesses the power to render the particular judgment, the judgment, even though erroneous, is immune from collateral attack. (*People ex rel. Courtney* v. *Fardy,* 378 Ill. 501.) The aggrieved parties have an adequate remedy by way of appeal.

In the two injunction proceedings before Judge Harrington, the civil service commission admittedly proposed to demote the five plaintiffs in the absence of statutory authority for such action. Indeed, the commission announced it would issue a "blanket" order demoting them and others. Had the announced intention of the commission been effectuated, each of these five plaintiffs would have been required to seek reinstatement by appropriate legal action and would have had to name as parties defendant other persons whose names appeared on the respective promotional eligible registers and whose rights were, or would be, affected by litigation. Again, had the wholesale demotions taken place, these plaintiffs would, no doubt, have been required to defend litigation instituted by others below them on the promotional eligible lists. More-

over, removal or demotion would have resulted in the loss of salary from the incumbent positions and the payment of the salaries to others who would be certified and appointed to the positions these plaintiffs now hold and from which they would have been ousted. Irreparable injury to them would have resulted. Even though they might well be the *de jure* employees, they would be precluded from recovering their salaries. (*People ex rel. Sartison* v. *Schmidt,* 281 Ill. 211.) Without question, wholesale demotions, or, as the commission puts it, a "blanket" order, would have created a multiplicity of separate actions by the employees affected. These facts, either specifically, or, for all practical purposes, admitted, together with the fact that the demotions would have constituted violations of the City Civil Service Act and of the rules and regulations of the commission itself, afford an adequate basis for the interposition of a court of equity to protect the plaintiffs in their legal rights resultant from their certification and promotion to the promotional positions they then occupied. The two writs of injunction issued by Judge Harrington did not interfere with or preclude the commission or the appointing officers from removing the plaintiffs, pursuant to section 12 of the City Civil Service Act. The orders assailed were limited to preventing demotions which would operate as a removal or discharge of plaintiffs from the classified service.

Since the issues in the present proceeding were made, the General Assembly passed Senate Bill No. 357, which was approved by the Governor on July 29, 1949. This bill amends section 10½ of the City Civil Service Act and, as far as we deem relevant here, provides, "The Civil Service Commission shall give preference for promotional appointment to persons as hereinabove designated whose names appear on existing promotional eligible registers or promotional eligible registers that may hereafter be created by adding to the final grade average which they receive or

will receive as the result of any promotional examination commencing prior to September 1, 1949 six-tenths of one point for each 6 months or fraction thereof of military or naval services not exceeding 30 months." (Laws of 1949, p. 580.) All of the parties to this proceeding and *amici curiae* have argued the constitutional validity of the new amendment to section 10½, which corrects and clarifies the language which we pointed out in the *Duffy case* rendered the 1947 amendments indefinite and uncertain in their application. While we cannot adjudicate it here, the amendment as made would appear to obviate this objection and the provisions of the section now fully disclose the proper method of the allowance of preference to those persons whose names appear on the promotional eligible register.

In accordance with the views heretofore expressed, we are of the opinion petitioners have failed to show a clear and undeniable right to a writ of *mandamus*. The answers of the two respondents are deemed sufficient. Accordingly, the writ of *mandamus* is denied.      *Writ denied.*