Northtown Bank of Decatur, an Illinois Banking Corporation, and the Millikin National Bank of Decatur, a National Banking Association, Plaintiffs-Appellants, v. Conrad F. Becker, Director of Financial Institutions of the State of Illinois, and the Citizens National Bank of Decatur, a National Banking Association, Defendants-Appellees.

Gen. No. 10,493.

Third District.

January 9, 1964.

Lord, Bissell & Brook, of Chicago, and Giffin, Winning, Lindner & Newkirk, of Springfield (Newell S. Boardman, Charles H. Weiland and James M. Winning, of counsel), for appellants.

Le Forgee, Samuels, Miller, Schroeder & Jackson, of Decatur (Thomas W. Samuels and E. Wayne Schroeder, of counsel), for appellee, the Citizens National Bank of Decatur. Henry F. Tenney, of Chicago and Paul W. Gordon, Jr., of Springfield, amici curiae, appearing for the Illinois Bankers Association.

CARROLL, PRESIDING JUSTICE.

On July 21, 1961, applications for permits to organize three state banks in Decatur, Illinois were filed with the Director of the Department of Financial Institutions of Illinois (referred to herein as the Director). Each of the signers of the applications was a director, officer, or employee of Defendant, The Citizens National Bank of Decatur, Illinois (referred to hereinafter as Citizens) which was then engaged in the banking business in Decatur. The applicants included every major officer of Citizens, each of its eleven directors, and each of its fourteen officers. These applications contained the following information: name of proposed bank, location, amount of capital stock, surplus and reserves, number and value of shares, financial worth of applicants and references as to their personal character. On September 20, 1961, the chairman of the board and president of Citizens wrote a letter on the bank's stationery to each of its 18,000 depositors, informing them that certain officers and directors of Citizens had filed applications to organize three new banks at certain locations in Decatur; that the names of the new banks would be Citizens North Decatur Bank, Citizens East Decatur Bank and Citizens South Decatur Bank; and that the new banks would be under the management of three of the vice-presidents of Citizens. The letter further stated in substance that a study of the needs for additional banking facilities in Decatur had been made by the directors and officers of Citizens; that as affili-

113

ates of Citizens, the new banks would have advantages such as experienced bank management and operating officers not available to most such new institutions; and that when the charters were granted the general public would have an opportunity to purchase stock in these new banks. Under date of September 20, 1961, plaintiff, Northtown Bank of Decatur, filed with the director written objections to the granting of permits to organize and to the issuance of charters to the three proposed banks. The objections urged were that the banking needs of Decatur are adequately served; that if the requested charters were granted it would result in branch banking in violation of section 6 of the Banking Act; that if granted, such charters would violate the Bank Holding Company Act of 1957; and that each of the names proposed for the new banks is deceptively similar to an existing bank in Decatur. The Director, by letter dated October 2, 1961, advised plaintiff Northtown that its objections had been considered; that it was the opinion of his department that the Bank Holding Company Act did not apply; that from a supervisory standpoint the department found nothing that "would even sound like branch banking"; that before any of the charters were granted a thorough investigation would be made; that at the most he could not say what the position of the department would be following such investigation; that the result of such investigation would be the basis on which permits would either be granted or refused.

One of the applications was processed by the Department and approved by the Director. However, as the result of this litigation, and issuance of a temporary injunction, the permits were not delivered and any further action thereon was suspended.

The plaintiffs, Northtown Bank of Decatur, and Millikin National Bank of Decatur are engaged in the banking business in the City of Decatur and are com-

petitors of defendant Citizens. The allegations of the complaint are in substance that the proposed organization of the three new banks will violate the Illinois Banking Laws; that the issuance of permits to so organize, or of a charter for said banks is unlawful for the reason that it appears to the plaintiffs that Citizens is promoting the organization of the proposed new banks and in so doing is attempting to establish branch banks; that the management of the proposed banks will be controlled by Citizens; that the organization and establishment of the three new banks in Decatur would cause plaintiffs irreparable injury, loss and damage for which they have no adequate remedy at law. The relief prayed was a temporary injunction restraining the Director from issuing either a permit to organize or a charter for the proposed three new banks, and a temporary injunction restraining defendant, Citizens, its officers, agents, and employees, from taking any further steps to obtain a permit to organize or a charter for said three new banks; and that upon final hearing, said temporary injunctions be made permanent.

On December 20, 1961, a temporary injunction as prayed was issued against the Director, but the prayer for relief against Citizens was abandoned because of the provisions of Title 12, Sec 91 USCA which prohibits the issuing of a temporary injunction against National Banks.

In its answer, Citizens denied that it was attempting to organize the three banks, or that it had authorized anyone to organize them, and denied its intention to engage in branch banking. One of several defenses set up in the answer was:

> "That neither its Board of Directors nor its stockholders has taken corporate action of any kind or character authorizing or directing the persons who signed the applications mentioned in the com-

115

plaint to sign them, nor has its Board of Directors or its stockholders ratified or approved the signing of said applications, nor have they taken any corporate action of any kind in relation to the proposed new banks."

The Attorney General answered for the Director, denying that Citizens in its corporate capacity is attempting to exercise powers not conferred on it by its charter or law.

The cause was heard upon the complaint and answers, with the result that the trial court found insufficient evidence to establish that Citizens, as a corporate entity, is attempting to establish and maintain the proposed three banks; that there was insufficient evidence to establish that said proposed banks are being organized as adjunct instrumentalities or agencies of Citizens, at which agencies, business of Citizens is to be conducted; that there was not sufficient competent evidence to establish that domination and control of the operation and business of the proposed three banks will be exercised by Citizens; that there was no clear and convincing evidence that plaintiff will be irreparably injured or damaged by the issuing of permits to organize the said proposed three banks under names not deceptively similar to any other bank in the State of Illinois; that the names proposed, Citizens North Decatur Bank, Citizens East Decatur Bank, and Citizens South Decatur Bank, are deceptively similar to the name "The Citizens National Bank of Decatur." In accordance with such findings, the court decreed that the Director be perpetually enjoined from issuing a permit to any of the proposed three banks under the names appearing in the applications for permits; that the complaint for permanent injunction against Citizens be dismissed for want of equity; and that the temporary injunction against the Director be dissolved.

From such decree plaintiffs appealed directly to the Supreme Court on the ground that a franchise is involved. However the Supreme Court determined that such appeal was wrongfully taken to that court and transferred the cause here for decision.

Plaintiffs' theory, as indicated in their brief, is that the trial court erred in giving "controlling effect" to Citizens self-serving resolution of February 12, 1962; and that violation of the banking laws of this state was clearly established by the evidence. Plaintiffs' statement that the trial court gave controlling effect to the February 12, 1962 resolution apparently refers to a memorandum opinion of the trial court which appears in the record. In that opinion the court expressed the belief that if a resolution adopted February 12, 1962 by the board of Citizens was to be ignored, then a presumption and reasonable inference could be found that an attempt was being made by Citizens through its officers and directors to circumvent section 6 of the Illinois Banking Law; that although a part of said resolution was self-serving, it nevertheless expressed the policy of Citizens and in the absence of proof of ratification of the acts of its officers it overcame any presumption or implication of an attempt by Citizens to institute branch banking. It was further observed by the court that the question whether the appearance of the names of officers of Citizens as officers of the new banks would amount to domination of the new banks by Citizens could not be determined until after the organization of the three proposed new banks was perfected.

It appears from the resolution in question that its adoption was occasioned by the filing of this action. It recites that Citizens is charged in the complaint in said action with attempting to organize three new banks in which its banking business will be conducted; that the proposed new banks will be agencies and

117

instrumentalities of Citizens and dominated and controlled by it; and that such actions of Citizens demonstrate an intention on the part of Citizens to violate the statutory provisions and public policy of Illinois prohibiting branch banks and branch banking and restricting bank holding companies. It further recites that none of the actions of the individuals making the applications for permits to organize the three new banks were authorized or subsequently ratified by the board of directors of Citizens; that on May 8, 1961, long prior to the filing of the applications in question and to the institution of this action, the board of directors of Citizens unanimously adopted a resolution openly expressing their opposition to proposals for branch banking in Illinois. The resolution concluded with a statement that Citizens has no intention or plan to establish or maintain any branch bank, any branch office, or additional office or agency for the conduct of its bank business. Plaintiffs insist that such resolution should not have been admitted in evidence and is not entitled to any weight. We are unable to agree that the February 12, 1962 resolution was the controlling factor in the conclusion reached by the trial court. As we read the memorandum opinion, it does no more than suggest possible presumptions which the court might indulge, depending upon whether or not the said resolution was held to be competent. But regardless of the weight the trial court may have accorded the resolution in question, for the reasons hereinafter indicated, we are of the opinion that the trial court's decision may be upheld without the resolution's support. It is true that corporation records are not admissible to establish or support a claim of the corporation against third parties. However in this instance, this rule is not applicable because the issue

118

in no way involves any claim or assertion of a right of the corporation of Citizens against third parties. Since much of plaintiffs' evidence bore upon the subject of the intentions and plans of Citizens, we think the statement of policy of that corporation as embodied in the resolution was competent as rebuttal evidence. George J. Cooke Co. v. Fred Miller Brewing Co., 316 Ill 46, 146 NE 459; Taylor v. Champaign County Abstract Co., 288 Ill App 442, 123 NE2d 543.

 Since Citizens is charged with organizing new banks in violation of the Banking Act, the organization procedures set out in the Act are important. Section 6 of the Illinois Banking Act (Ill Rev Stats 1961, c 16½, § 106) provides:

"6. Branch Banking Prohibited.) No bank shall establish or maintain more than one banking house, or receive deposits or pay checks at any other place than such banking house, and no bank shall establish or maintain in this or any other state or country any branch bank, nor shall it establish or maintain in this State any branch office or additional office or agency for the purpose of conducting any of its business."

Section 8 of the Act provides:

"8. Incorporators.) A state bank may be organized on application by five or more incorporators who shall be individuals and residents of this State. Each incorporator shall undertake to subscribe and pay in full in cash for stock having a par value of not less than one per cent of the minimum capital, surplus and reserve for operating expense requirements as set forth in Section 7."

Section 9 of the Act provides:

"9. Contents of Application.) The application for a permit to organize shall be filed with the Director signed by each of the applicants and shall be acknowledged before some officer authorized by law to acknowledge deeds. It shall state:

(1) The name, residence, business or occupation and address of each applicant, and a statement of the proposed management.

(2) The name for the proposed bank.

(3) The location of the proposed bank.

(4) The time for which the proposed bank shall continue which may be perpetual.

(5) The amount of capital, surplus and reserve for operating expenses for the proposed bank.

(6) The number of shares of capital stock, the number of shares and classes of preferred stock, if any, the par value of the capital stock and preferred stock, and the amount for which each share of capital stock and preferred stock is to be sold.

(7) A statement of the financial worth of each of the applicants.

(8) Three references as to the personal character of each of the applicants."

Section 10 of the Act is as follows:

"10. Permit to Organize.) Upon the filing of an application for a permit to organize, the Director shall investigate the truth of the statements therein and shall consider the proposed bank's capital structure, its future earnings prospects, and the general character of its proposed management, and notwithstanding the provisions of Section 7 of this Act, the

Director shall not approve the application and issue a permit to organize unless he shall be of the opinion and finds:

(1) That the proposed capital meets the requirements of this Act;

(2) That the future earnings prospects are favorable;

(3) That the general character of its proposed management is such as to assure reasonable promise of successful operation; and

(4) That the name of the proposed bank is not the same as or deceptively similar to the name of any other bank then operating in this State."

We find nothing in the Act indicating that stockholders, officers, directors, or employees of existing banks, as individuals, may not join with other individuals in making application for a permit to organize a state bank. No provision is made in the Act for the filing with the Director of objections to the issuance of permits to organize, and there is no provision therein for giving notice to anyone of the filing of such applications or for holding any type of hearing preliminary to the issuance of such permits. Determination as to whether or not a particular permit will issue is left entirely to the Director. The Act forbids the approval by the Director of an application unless he shall be of the opinion that the requirements of section 10 have been met. It does not follow that because the Director may be of the opinion that a permit should issue that he is foreclosed of the right to refuse to issue a charter after compliance with the organization procedures outlined in the Act. It is made clear in the law that if the Director after a thorough examination into the affairs of the proposed bank is satisfied that the requirements of the Act have been met and no intervening circumstances have occurred to

change the Director's findings as to the sufficiency of the application, then he shall issue a charter authorizing the bank to commence business.

■ Keeping the provisions of the Act in mind, we think it pertinent to consider whether there is in this case any present cognizable controversy. When the complaint was filed the Director had processed only one of the applications for permits to organize and this had not been delivered to the incorporators. In deciding whether to approve or reject the applications, the Director was required to consider certain factors specified in section 10 of the Act; and was prohibited by said section from approving such applications unless he was of the opinion and found that the conditions specified in section 10 had been met. The complaint does not charge and it may not be assumed that the Director violated or ignored any of his duties as prescribed by section 10. We find nothing in said section which suggests or implies that the Director shall withhold approval of an application for a permit to organize on the merely speculative basis that when chartered, the bank may become an accessory to a violation of the banking laws. Section 10 clearly defines the authority of the Director in passing upon an application for a permit to organize. Any assumption of authority beyond that specified in said section would be clearly illegal. He may not refuse to grant a permit on grounds other than those specified in section 10. People ex rel. Shultz v. Russel, 294 Ill 283, 128 NE 495; Verhelle v. Eveland, 347 Mich 612, 81 NW2d 397.

Obviously at the time plaintiffs applied to the courts for relief, the defendant, Citizens, was not violating the banking laws. It is not charged in the complaint that at that time Citizens had established or was maintaining a branch bank. At that time no stock in any of the three proposed banks had been sold. The di-

rectors and officers had not been named and the organization of the banks had not been reported to the Director. In such situation, upon what basis could the Director or anyone else determine that the three proposed banks would be branches of Citizens? Certainly the Director was under no duty to share plaintiffs' conviction that granting the permits to organize and subsequent issuance of charters would result in a violation of section 6 of the Banking Law. In arguing that a present controversy exists, plaintiffs attach significance to the fact that the record shows the Director gave consideration to Northtown's objections, and then decided the applications complied with the Illinois Banking Law, and indicated he was going to stick to his decision even in the face of a threatened lawsuit. This, the plaintiffs conclude, establishes the existence of a controversy. While it must be conceded that the officers of Northtown and the Director were not in agreement on the question as to whether the permits should be issued, it does not follow that an actual controversy was thereby created. Jurisdiction over the processing of an application for a permit to organize a bank is vested exclusively in the Director. It is not an adversary proceeding and was not rendered so by the exchange of opinions between plaintiffs and the Director. We find no provision in the statute which requires the Director to take any action on objections to the granting of a permit to organize which may be filed. Because the Director here courteously acknowledged receipt of plaintiffs' objections, it cannot be said that his duties were thereby enlarged.

We turn now to consideration of another factual situation disclosed by the record which bears sharply upon the question whether this appeal involves any actual controversy. At the time the suit was filed, only the application for a permit to organize the Citizens North Decatur Bank had been processed.

Prior to the trial, one of the five signers of that particular application died. Since thereafter it did not bear the required five signatures, no further action thereon could be taken. The evidence shows that the Director had decided to hold the other two applications in abeyance, and to make no decision thereon until the Director could see how "successful the first processing turned out." It thus appears that plaintiffs sought to have the trial court determine that Citizens was violating the Branch Banking Law by dominating and controlling three banks which did not even exist. Such a determination of necessity could be made only by speculating that certain events predicted by plaintiffs would some day transpire. If we were to undertake to determine whether injunctive relief against Citizens should be granted, it could be done only by substituting conjecture for facts. Such determination is beyond the duty of this court.

We think the situation presented by this appeal calls for application of the well established rule that the duty of courts is confined to consideration of actual controversies. In Chicago City Bank & Trust Co. v. Board of Education of Chicago, 386 Ill 508, 54 NE2d 498, the court said:

"There is also a class of cases which cannot be said to be strictly moot within the meaning of that term as commonly understood. This class includes all cases which involve mere abstract questions on which the court can grant no effectual relief to either party. In National Jockey Club v. Illinois Racing Comm., 364 Ill 630, we said: 'The rule is, that when a reviewing court has notice of facts which show that only moot questions or mere abstract propositions are involved it will dismiss the appeal or writ of error and will not review the cause merely to decide moot

questions. The duty of judicial tribunals is limited to determining rights of persons or property actually controverted in the particular case before it' . . . Where there is no real present question involving actual interests and rights for a reviewing court to consider, the court should not be compelled to review a cause merely for the purpose of determining who ought to pay the cost of the suit."

In In re Matter of Creager, 323 Ill App 594, 56 NE2d 649, we find where the court, in determining whether an actual controversy existed had this to say:

"The law is well settled that the duty of a judicial tribunal is limited to determining rights of persons or of property actually controverted in the particular case before it, and the existence of such an actual controversy is an essential to appellate jurisdiction. (National Jockey Club v. Illinois Racing Commission, 364 Ill 630, 631; Chaitlen v. Kaspar American State Bank, 372 Ill 83, 87.) Where the substantial questions or the issues involved in the trial court no longer exist, an appellate court will not review the cause merely to decide moot questions to make a precedent, or to determine the liability for costs. (Tuttle v. Gunderson, 341 Ill 36, 45; Jones v. Clark, 355 Ill 527, 530.) A moot case is one which seeks to determine an abstract question, which does not rest upon existing facts or rights, or which seeks a judgment on a pretended controversy, when in reality there is none, or a decision in advance about a right before it has been actually asserted and contested, or a judgment upon some matter which, when rendered, for any cause, cannot have any practical legal effect upon a then existing controversy."

The same rule was applied in Railway Exp. Agency v. Illinois Commerce Commission, 374 Ill 151, 28 NE2d 116.

█ It is apparent to us that what plaintiffs actually seek on this appeal is an adjudication upon a purely abstract question. Such question has been constructed upon the assumption that if at some time in the future certain banks are chartered, a violation of section 6 of the Banking Law will occur. If we are to assume such eventuality, we must further assume that the Director is either ignorant of the fact that branch banking is illegal in Illinois, or that he chooses to willfully refuse to discharge his duty under the Banking Act. We have no right to entertain either assumption. The allegations as to ownership of the stock, management and control of the proposed banks are based entirely upon speculation. As a result we have here only feigned issues and no actual controversy. It is true that the record discloses that the individual applicants for permits to organize were stockholders or officers of Citizens. However the Act does not provide that the incorporators applying for an application to organize a bank must be individuals and residents of the state other than stockholders, officers, or employees of existing banks. Whether as a result of the applications of these stockholders, officers, and employees there will be established a branch or branches of Citizens, can be determined only when charters are issued and the new banks open for business. The Banking Law provides that no bank shall establish or maintain any branch bank in Illinois for the purpose of conducting any of its business. It follows that the prohibition against branch banking may not be invoked against Citizens unless that institution has established or is maintaining a branch bank. Here plaintiffs seek to have the court adjudge in advance of the completion of the bank organization procedures

126

which the Act requires of the Director and applicants, that the proposed banks when organized will be branches of Citizens. The source of this suggested authority of the court to thus intervene in the administration of the Director's duties is not disclosed by plaintiffs' brief. The powers and duties of the Director with respect to the issuance of bank charters are set forth in section 13 of the Act. Under such section he is vested with discretionary powers to withhold the issuing of a charter when he has reason to believe that a bank is organized for any purpose not contemplated by the Act. Plaintiffs have asked the court to assume that the Director's discretion will be abused and upon such assumption to hold that Citizens is guilty of violating the banking laws of this state. The situation which plaintiffs anticipate will develop is far too speculative to warrant judicial determination. Obviously plaintiffs' action seeking judicial interference with the administrative duties of the Director is premature.

In view of the conclusion reached we deem it unnecessary to consider other points argued in the briefs, or to review the numerous authorities cited in support thereof.

For the reasons herein expressed we are of the opinion that an actual controversy which is essential to appellate jurisdiction does not exist. Accordingly the appeal is dismissed.

Appeal dismissed.

ROETH, J., concurs.

REYNOLDS, J., dissents.