(No. 38455.—

NORTHTOWN BANK OF DECATUR *et al.,* Appellants, *vs.*
CONRAD F. BECKER, Director of Financial Institutions,
*et al.,* Appellees.

*Opinion filed November 24, 1964.*

LORD, BISSELL & BROOK, of Chicago, and GIFFIN, WINNING, LINDNER & NEWKIRK, of Springfield, for appellants.

LE FORGEE, SAMUELS, MILLER, SCHROEDER & JACKSON, of Decatur, (THOMAS W. SAMUELS and E. WAYNE SCHROEDER, of counsel,) for appellee, Citizens National Bank of Decatur.

HENRY F. TENNEY and LYMAN W. HULL, both of Chicago, for *amicus curiae*, Illinois Bankers Association.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This action was instituted to restrain the organization of three proposed banks in Decatur upon the ground that they would be branch banks in violation of the Bank Holding Company Act and the Banking Act. (Ill. Rev. Stat. 1961, 16½, pars. 73, 106.) The trial court granted a part of the injunctive relief sought but denied the balance. The Appellate Court dismissed the plaintiffs' appeal on the ground that no justiciable controversy existed. (45 Ill. App. 2d 112.) This court granted leave to appeal.

Certain officers, directors and employees of the Citizens National Bank of Decatur filed applications for permits to organize three state banks in Decatur. The plaintiffs, Northtown Bank of Decatur and Millikin National Bank of Decatur, competitors of Citizens, filed this action to enjoin the Director of Financial Institutions from approving the applications and from issuing charters to the proposed banks. The Director and Citizens were made defendants. The complaint further prayed that the applications be declared void and that Citizens and its officers, agents and employees be enjoined from taking further steps to obtain permits or

charters for the new banks. Because the names of the three proposed banks—Citizens North Decatur Bank, Citizens East Decatur Bank and Citizens South Decatur Bank—were deceptively similar to the name Citizens National Bank of Decatur, the trial court enjoined the Director from issuing permits to organize the banks under those names, but denied all other injunctive relief sought by the plaintiffs. It is from this denial of relief that plaintiffs have appealed.

The plaintiffs' position is that although it is proposed to organize three separate banks, each with a separate corporate structure, the separate corporations would actually be no more than a facade behind which Citizens will engage in branch banking. In support of this position they point out that each of the applications for a permit lists as the managing officer a different vice president of Citizens, and that the evidence shows that each of those men would continue to serve as a vice president of Citizens after the new banks were organized. They also emphasize statements made in a letter signed by the Chairman of the Board of Directors and the President of Citizens, and mailed to its depositors. The letter stated that "as affiliates of the Citizens National Bank, they [the three new banks] will have many advantages such as experienced banking management and operating efficiencies not available to most such new institutions", and that Citizens would be "strengthened by providing more convenient services to all of the people of the community through these new banks."

Because we are of the opinion that the judgment of the Appellate Court dismissing the appeal was correct, it is not necessary to discuss the evidence in detail, or to express any opinion as to whether or not operations conducted in the manner described in the letter to Citizens' depositors would violate the statutory prohibition against branch banking.

The Banking Act prescribes separate and distinct steps to be taken in the organization of a new bank. The first of these steps is the filing of an application for a permit to

organize. The application must be signed by at least five applicants who are residents of this state, and filed with the Director of Financial Institutions. It must contain information as to the character and financial worth of each applicant, state the name, location and proposed management of the new bank, and furnish prescribed information regarding the stock to be issued and other details of the bank's capital structure. (Ill. Rev. Stat. 1961, chap. 16½, par. 109.) Section 10 of the Act provides that "Upon the filing of an application for a permit to organize, the Director shall investigate the truth of the statements therein and shall consider the proposed bank's capital structure, its future earnings prospects, and the general character of its proposed management, and * * * the Director shall not approve the application and issue a permit to organize unless he shall be of the opinion and finds: (1) That the proposed capital meets the requirements of this Act; (2) That the future earnings prospects are favorable; (3) That the general character of its proposed management is such as to assure reasonable promise of successful operation; and (4) That the name of the proposed bank is not the same as or deceptively similar to the name of any other bank then operating in this State." Ill. Rev. Stat. 1961, chap. 16½, par. 110.

If a permit to organize is granted, the applicants may proceed to obtain subscriptions to the capital stock of the bank, and when the capital and preferred stock are fully subscribed for, a meeting of subscribers is to be called for the purpose of electing directors. (Ill. Rev. Stat. 1961, chap. 16½, par. 111.) The directors so elected may then proceed to qualify themselves as directors, elect one of their number president, make and adopt by-laws, appoint officers and fix their salaries, "furnish to the Director lists of the stockholders and copies of any other records the Director may require," collect stock subscriptions, and report the organiza-

tion to the Director. Ill. Rev. Stat. 1961, chap. 16½, par. 112.

Section 13 provides that "When the directors have organized as provided in Section 12 of this Act, and the capital stock and the preferred stock, if any, together with a surplus of not less than ten per cent of the capital, and a reserve for operating expenses of at least five per cent of the capital, shall have been all fully paid in and a record of the same filed with the Director, he shall by himself or some competent person of his appointment, make a thorough examination into the affairs of the proposed bank, and if satisfied that all the requirements of this Act have been complied with, and that no intervening circumstance has occurred to change the Director's findings made pursuant to Section 10 of this Act, * * * he shall issue a charter authorizing the bank to commence business as authorized in this Act. * * * The Director may, in his discretion, withhold the issuing of said charter when he has reason to believe that the bank is organized for any purpose other than that contemplated by this Act * * *." Ill. Rev. Stat. 1961, chap. 16½, par. 113.

When this case was heard in the trial court the applications for permits to organize the three banks were awaiting action by Conrad F. Becker, who was then Director of Financial Institutions. It appears that he had in fact decided to approve one of the applications. But the issuance of a permit to organize does not enable a proposed bank to commence business. It only authorizes the applicants to proceed with the other steps required by the Act. Nor does the issuance of a permit to organize mean that in the future a charter authorizing the bank to commence business will necessarily be granted. The decision to issue a permit to organize and the decision to issue a charter are distinct acts, and it appears that the Director so understood. In a letter to the plaintiff Northtown Bank he said that while he had

seen nothing "that would even sound like branch banking" during his consideration of the applications for permits to organize, "I can only advise you that we will make a thorough investigation, along with the F.D.I.C., before any of these charters are granted, but what our position will be, at this moment I am unable to determine."

Insofar as the complaint seeks to have the applications for permits to organize declared void, and to enjoin the Director and Citizens from taking any further action with regard to them, the circuit court correctly found that the plaintiffs were not entitled to injunctive relief since "there is no clear and convincing evidence that plaintiffs will be irreparably injured or damaged by the issuing of these three permits under names not deceptively similar to any other bank in the State of Illinois."

In all other respects the plaintiffs' suit is premature. At this point no permits to organize have yet been issued. No stock has been subscribed, no directors or presidents elected, no officers appointed, no by-laws adopted, and of course no reports concerning these matters have been submitted to the Director as the statute requires. Until these steps have been completed the Director can not make the thorough investigation into the affairs of the proposed banks that is required. It is only after such an investigation that he may properly determine whether the proposed banks have been "organized for any purpose other than that contemplated by" the Banking Act.

The plaintiffs have argued that unless injunctive relief may be had to prevent the issuance of a permit to organize a bank, no effective remedy is available. This proposition is based upon section 50 of the Banking Act, which provides: "Except by the authority of the Director, represented by the Attorney General, no complaint shall be filed or proceedings commenced in any court for the dissolution or for the winding up of the affairs or for the appointment of a receiver for

any state bank on the grounds: * * * (3) That its business is being conducted in an unlawful, fraudulent or unsafe manner." Ill. Rev. Stat. 1961, chap. 16½, par. 150.

It is unrealistic, the plaintiffs say, to assume that the Director of Financial Institutions, who has approved the organization of a proposed bank, would subsequently institute an action challenging the legality of its operations. And since they read the statute as prohibiting the maintenance of such an action by anyone else, they argue that there is no method by which a violation of the statutory prohibitions against branch banking may be reached. What was said in *People ex rel. Benefit Ass'n of Railway Employees* v. *Miner,* 387 Ill. 393, 402, with respect to a somewhat similar provision of the Insurance Code, is, we think, a sufficient answer at the present time: "Petersen [the complaining party] may have his remedy by application to the Director of Insurance, requesting the bringing of such a suit, or correction of the evil he says exists. It cannot be presumed that the Director, upon proper showing, would refuse to take such action as may be required to remedy the situation. * * * In *American Surety Co.* v. *Jones,* 384 Ill. 222, it was held, citing *People ex rel. Gosling* v. *Potts,* 264 Ill. 522, that *mandamus* will lie to compel the Director of Insurance to do his duty under the statute."

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*