GROMER SUPERMARKET, INC. *et al.*, Plaintiffs-Appellees, *v.* THE POLLUTION CONTROL BOARD *et al.*, Defendants-Appellants.

(No. 57013; ▮▮▮▮▮▮▮

First District—July 31, 1972.

William J. Scott, Attorney General, of Chicago, (David C. Landgraf and Kenneth A. Manaster, of counsel,) for appellants.

Arvey, Hodes & Mantynband and Chadwell, Kayser, Ruggles, McGee, Hastings & McKinney, both of Chicago, (William G. Clark, Howard Arvey, C. Lee Cook, Jr., and Gilbert Feldman, of counsel,) for appellees.

Kleinman, Cornfield & Feldman, of Chicago, for intervenor-appellee United Steel Workers of America, Int'l. Union, AFL-CIO.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Pollution Control Board, an agency of the State of Illinois, its chairman and all of its members (Board) have taken this interlocutory appeal from an order for issuance of a temporary injunction entered by the Circuit Court of Cook County on motion of Gromer Supermarket Inc. and 13 other plaintiffs. The injunctional order restrained the Board, until further order of court, "* * * from holding or conducting, scheduling or rescheduling any public hearings on the question of the adoption of a certain proposed regulation officially designated * * *" as the "Proposed Beverage Container Regulation". The trial court also denied the amended motion of the Board to dismiss the complaint.

● 1 The pertinent facts appear from the properly pleaded allegations of plaintiffs' complaint which are admitted by the motion to dismiss as amended. (*Acorn Auto Driving School, Inc. v. Board of Education,* 27 Ill.2d 93, 96, 187 N.E.2d 722; *Follett's Illinois Book & Supply Store, Inc. v. Isaacs,* 27 Ill.2d 600, 603, 190 N.E.2d 324.) Plaintiffs' complaint first described the various plaintiffs. The 14 plaintiffs may be classified into three categories. Six of them are dealers in beer or carbonated beverages, or both, in cans and bottles including one association composed of retailers of this type. Six of them are labor unions whose members are employed in the manufacture of glass containers or in the processing and packaging of malt beverages. The remaining two are consumers of such beverages and taxpayers who reside within the City of Chicago.

The complaint alleged that taxes paid by some of the plaintiffs enter into the general revenue of Illinois and are used to fund the activities of state agencies including the Board. The Board is properly described as the Pollution Control Board organized under Ill. Rev. Stat. 1971, ch. 111½, pars. 1005 and following, commonly referred to as the "Environmental Protection Act." The complaint referred to the authority of the Board to conduct hearings upon complaints charging violations of the statute and also to adopt rules and regulations as specifically set forth

in the Act. See Ill. Rev. Stat. 1971, ch. 111½, pars. 1005(b), 1005(d) and 1027.

The complaint also alleged that the statute establishes the Illinois Institute For Environmental Quality under the supervision and control of a Director. (Ch. 111½, par. 1006.) The Director is required to establish a Solid Waste Management Task Force which is directed to make surveys and recommendations regarding development of regional systems of solid waste collection; to coordinate municipal and industrial solid waste disposal programs and also "* * * to make periodic reports and recommendations for submission to the Board by the Institute at such intervals as to assure compliance with the purposes of this Act and paragraph." (Ch. 111½, par. 1006.) The complaint alleged that this same section of the statute provides that the Board shall make rules and regulations on these subjects based upon recommendations of the Task Force.

The complaint further alleged that the Institute did establish a Task Force which made a recommendation that a regulation be enacted by the Board "* * * requiring that all soft drink and malt beverage containers be redeemable by the consumer for a minimum of 5 cents per container at the retail level of trade." In implementation of said recommendation by the Task Force, a lengthy proposed regulation was transmitted by the Institute to the Board. On December 5, 1971, the Board announced that it had authority to adopt the proposed regulation. Hearings were scheduled therein in Chicago during January, 1972, and in Springfield, Alton and Champaign during February, 1972. A complete copy of the proposed regulation is appended to the complaint. It need not be summarized here because no point is raised concerning specific provisions thereof.

The complaint further alleged that the legislation creating the Board was introduced into the House of Representatives of the Illinois General Assembly on April 17, 1970. In its original form, Section 22 of this proposed legislation (now Ill. Rev. Stat. 1971, ch. 111½, par. 1022) gave the Board power to adopt regulations pertaining to the "Standards, conditions and prohibitions regarding the sale, offer for sale, or use of any container, bottle, or other article that the Board may determine to create an unreasonable burden of disposal, and charges upon the sale, offer or use of such article." Such charges were to be "* * * based upon the damage done by disposal of such articles, or upon the cost of their disposal." It was further alleged that this grant of power was deleted from the proposed legislation by the General Assembly which thus manifested a clear intent to withhold from the Board the power to regulate standards, conditions and prohibitions regarding the sale, offer for sale or use

of containers and bottles. It was further alleged that section 27 of the Act in its present form provides that (Ill. Rev. Stat. 1971, ch. 111½, par. 27):

"No charge shall be established or assessed by the Board or Agency against any person for emission of air contaminants from any source, * * * for the sale, offer or use of any article or for disposal of any refuse."

The complaint also alleged that the Board was illegally exceeding its jurisdiction by holding hearings on the proposed regulation since it would not have power or authority to adopt a regulation on this subject in any form. It alleged that assumption of authority by the Board to adopt such a regulation would constitute an invalid delegation of authority by the Legislature to the Board and that such action by the Board would be an exercise of discretionary power in an area wherein guidelines and standards for exercise of such power had not been properly defined. Plaintiffs also allege that holding hearings on a subject matter involving an illegally assumed delegation of authority would itself be invalid.

A number of other legal matters were alleged in the complaint including a reference to Section 6 of the Act (establishing the Institute and the Task Force, ch. 111½, par. 1006), which plaintiffs alleged did not include the power to make a recommendation to the Board concerning minimum beverage container deposits or to impose any other condition on the sale or use of containers. In this regard, the complaint alleged that if the Act were to be interpreted to vest authority in the Task Force to make such recommendations, and thus to empower the Board to adopt such a regulation, this would create an unconstitutional delegation of legislative power to the Task Force.

The complaint, therefore, alleged that a justiciable controversy exists between the parties concerning proper interpretation of the Act. An opinion of the Board issued on March 3, 1971 is appended to the complaint. The Board there stated that it did not possess authority to adopt regulations on the subject of beverage containers without a recommendation by the Task Force. However, it was further alleged that, in a so-called newsletter, the Board stated that it had authority to adopt the proposed regulation under Section 6 or under Section 22 of the Act. Plaintiffs asserted that the Board has no power or authority to pass any regulation on the subject matter of containers and that it is acting outside of its jurisdiction in holding hearings on the subject of the proposed regulation. The complaint alleged that the scheduled hearings would entail expenditure of substantial time and money by the Board and by plaintiffs and that postponement of the hearings would not cause dam-

age or inconvenience. The complaint prayed that the court declare the rights of the parties under the pertinent Act in accordance with the contention of plaintiffs and that plaintiffs be granted temporary and permanent injunctional relief.

The Board filed a motion to dismiss the complaint as substantially insufficient in law. The motion set forth that plaintiffs have an adequate remedy at law under the Administrative Review Act (Ill. Rev. Stat. 1971, ch. 110, pars. 264 and following), and also under the Environmental Protection Act. (Ill. Rev. Stat. 1971, ch. 111½, pars. 1029 and 1041.) The motion also set forth that the complaint failed to allege facts showing an actuality or threat of irreparable harm as necessary to warrant use of the injunctive powers of the court. The Board also filed an amended motion to dismiss which stated in addition that the complaint fails to state a cause of action in that the proposed regulation was constitutionally and statutorily valid and within power of the Board to adopt. The motion to dismiss was denied by the court on the same date that the injunctional order appealed from was entered.

In this court, the Board contends that the temporary injunction was improvidently issued because: (1) there is no present justiciable controversy between these parties; (2) plaintiffs have an adequate remedy at law; (3) no showing of special injury has been made by plaintiffs and plaintiffs have failed to satisfy the applicable tests or requirements for issuance of a temporary injunction. In opposition to these matters, the plaintiffs urge: (1) that the sole test regarding the issuance of the injunction is whether the trial court abused his discretion; (2) that there is a justiciable controversy ripe for decision now; (3) that plaintiffs have no adequate remedy at law and that plaintiffs are not required to show threatened destruction of their business to be entitled to injunctive relief. Plaintiffs also urge that they have satisfied all of the legal criteria for issuance of the injunction; the Board lacks statutory power to regulate within the field of beverage containers; that the complaint shows irreparable harm to plaintiffs without the injunction; that the preliminary injunction has harmed neither defendants nor the People of Illinois and that issuance of the injunction has served the public interest.

Under the view which we take of the case, we find it necessary to answer only one question:

Is the difference of opinion and dispute between these parties "ripe for adjudication" or was this suit prematurely filed?

● 2   As appears from the allegations of plaintiffs' complaint, the Board has not adopted any regulation directed to the subject matter in question. The Board has received recommendations from the Solid Waste Management Task Force established within the Illinois Institute for

Environmental Quality pursuant to the statutory direction. (Ill. Rev. 1971, ch. 111½, par. 1006.) The complaint alleges that the Board announced that it had authority to adopt a regulation as proposed by the Task Force, but, no such regulation has been adopted. The situation simply is that the Board has scheduled hearings in an effort to determine whether or not this proposed regulation should be adopted. No person can predict the future course of action which the Board will take and whether or not it will, in fact, adopt the recommendation regulation in any form. Under circumstances of this kind, he hold that the controversy between these parties is not presently ripe for adjudication. This conclusion is based upon the following decided cases all of which espouse principles which are dispositive of the case at bar.

In *Northtown Bank of Decatur v. Becker*, 31 Ill.2d 529, 202 N.E.2d 540; also 45 Ill.App.2d 112, 195 N.E.2d 404, two banks sought to enjoin the Director of Financial Institutions from approving certain applications for permits to organize three new banks and also from issuing charters to these proposed banks. The suit was predicated upon alleged deceptive similarity between the names of the three proposed new banks and the names of plaintiffs. Plaintiffs also contended that operation of the three new financial institutions would actually constitute illegal branch banking. During the pendency of the case, the three applications for permits were awaiting action by the Director. He had decided to approve one of the applications. None of them had been issued and no charter had been issued. The Appellate Court held that the suit had been prematurely brought and that no actual controversy was presented. The court characterized plaintiffs' action as "* * * seeking judicial interference with the administrative duties of the Director * * *" and therefore as "premature". (45 Ill.App.2d 112, 127.) The Supreme Court affirmed this result and held that the suit was premature and that injunctive relief had been improvidently granted. The court pointed out that plaintiffs claimed that the three proposed banks were to be organized for purposes other than that contemplated by the law of Illinois but that the Director could not possibly ascertain the truth of this allegation until the various steps toward actual organization of the three new banks had been taken.

The second case which governs here is *Illinois School Bus Co. v. South Suburban Safeway Lines, Inc.* (Ill.App.2d), 270 N.E.2d 200 (leave to appeal denied September 28, 1971). There, a school bus company obtained an injunction restraining a suburban bus line from transporting school children under certain circumstances. The complaint did not allege that defendant had entered into a contract with any school district for the transportation of children but only that defendant had lodged a bid for such a contract with a school district. We reversed the injunc-

tional order primarily upon the authority of the *Northtown* decision. We pointed out that the order in effect assumed that defendant would actually obtain such a contract; and, also assumed that defendant would violate the law of Illinois in performance thereof. Under these circumstances the suit was premature and the injunctional order was reversed.

The third applicable authority is a trilogy of decisions by the United States Supreme Court simultaneously decided on May 22, 1967, two of which are cited and relied upon by both sides in the case at bar. These cases are: *Abbott Laboratories v. Gardner*, 387 U.S. 136 (No. 39); *Toilet Goods Association v. Gardner*, 387 U.S. 158 (No. 336); and *Gardner v. Toilet Goods Association*, 387 U.S. 167 (No. 438). A majority of the court held that the attempt to obtain judicial relief was not ripe in case No. 336, so that the suit was premature, but that judicial intervenion was proper and the controversies were ripe for decision in cases numbered 39 and 438. The distinction between these two categories is determinative in the case at bar.

In *Abbott* (No. 39) the Commissioner of Food and Drugs promulgated a regulation requiring that where the label of any prescription drug bore a proprietary or trade name that the established name of the drug should also appear upon the label. The same regulation was made applicable to all advertisements for prescruption drugs. Mr. Justice Harlan, who delivered all three of these majority opinions, held that the case was ripe for judicial intervention. He pointed out that this determination required an evaluation of "* * * both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." (387 U.S. at page 149.) The court held the situation ripe because the only issue was a legal one involving construction of the pertinent statute. Furthermore, the regulation subjected the parties to expensive hardship since it would require immediate charges in all labels and printed material at a considerable expense.

In *Toilet Goods Association* (No. 336) the Commissioner issued a regulation providing for suspension of the certification of any firm which would refuse his employees free access to all of their facilities, processes and formulae concerning color additives. The majority of the Court held that the attempted challenge of this regulation was not ripe for judicial action. The court stressed that judicial determination of the merits of the situation "* * * is likely to stand on a much surer footing in the context of a specific application of this regulation than could be the case in the framework of the generalized challenge made here." (387 U.S. at page 164.) The court also noted that no irremediable loss would follow from a challenge to the regulation by any manufacturer who would refuse inspection.

In *Gardner* (No. 438), the majority held that the situation was ripe for operation of the judicial process. That case involved other regulations promulgated by the Commissioner concerning color additives in food and cosmetics, including hair dyes. Applying the same standards as set forth in *Abbott* (No. 39), the court pointed out that there was no need for factual determinations which could more readily be made by the administrative agency. In addition, the regulations were "* * * self-executing, and have an immediate and substantial impact upon the respondents." 387 U.S. at page 171.

Three of the justices concurred in *Toilet Goods* (No. 336) but dissented in the other two cases. They would hold all three of the situations not ripe for judicial intervention. Mr. Justice Fortas, writing for this minority, referred to "* * * the salutary rule that court should pass upon concrete, specific questions in a particularized setting rather than upon a general controversy divorced from particular facts." 387 U.S. at page 176.

The decisions of the United States Supreme Court concerning the need of ripeness for adjudication are completely in accord with the decisions of the courts of Illinois. Note also Davis, Administrative Law Treatise, Section 21.10 at page 701 of the 1970 Supplement to this work, to the effect that the doctrine of ripeness as announced by the Supreme Court in Toilet Goods and other cases is in "* * * line with the prevailing thinking of state judges."

The application of these principles to the case at bar is immediately apparent from the allegations of plaintiffs' complaint. No facts of any kind have been decided by the administrative agency. No person can tell whether any regulation will ever be adopted by the Board. No action of any kind has been taken by the Board against plaintiffs. No compulsion of any kind has been exercised against them. No regulation has been adopted. Plaintiffs are not confronted with any regulation duly adopted by the Board. Their only problem is the pendency of hearings so that the Board can determine if any regulation should be adopted. No loss has been suffered by any of plaintiffs in any of their pertinent activities and no such loss is imminent.

These facts sufficiently differentiate the decision by this court in *Walton Playboy Clubs Inc. v. City of Chicago,* 37 Ill.App.2d 425, 185 N.E.2d 719, cited and relied upon by plaintiffs. In that case, plaintiff had retail liquor and restaurant licenses from the City of Chicago. The Corporation Counsel advised the Police Superintendent that plaintiff's method of doing business was illegal. In anticipation of license revocation by the City, plaintiff sought declaratory and injunctive relief. No question of ripeness of the issue was raised or decided. In fact, the City

filed a counterclaim for declaratory judgment. It is readily apparent that plaintiff's valuable going business could be immediately terminated and its large investment jeopardized or even destroyed by a revocation which was clearly imminent.

Application of the same standards to *People ex rel. Hurley v. Graber*, 405 Ill. 331, 90 N.E.2d 763, cited by plaintiffs, shows it to be inapposite here. There, the Supreme Court denied *mandamus* to expunge an injunction which prevented the Civil Service Commission from demoting plaintiffs. The Commission had publicly proclaimed its intention to make these demotions. No question of ripeness was raised or decided. The opinion antedates the conception of this legal principle. The Supreme Court pointed out that these "wholesale demotions" would have resulted in "[i]rreparable injury" to plaintiffs. (405 Ill. 331, 350-351.) This presents a vivid contrast to the case at bar where no such injury is imminent.

Counsel for plaintiffs contend that they are concerned here with an attempt by the Board to act within the framework of a subject matter over which it has no jurisdiction. They urged upon us in their briefs and in oral argument that the applicable statute does not grant authority to the Board to promulgate any regulation upon the subject of containers or bottles or their disposal. In our opinion, we do not reach this issue for disposition. No action by the Board has made the issue ripe for judicial determination. We do not know if the Board will act upon this subject matter or whether it will, after due hearing, adopt no regulation or even an amended regulation with which plaintiffs may be in full accord.

Plaintiffs further point out that they have status as taxpayers and that they may, therefore, assert such rights to prevent unlawful expenditure of funds by the Board in the conduct of proposed hearings. The complaint shows that only three plaintiffs claim status as taxpayers. Gromer Supermarket Inc. alleges only that it "* * * is a taxpayer of this State." Plaintiff George Ulrich alleges that he "* * * is a taxpayer who pays various taxes, including but not limited to real estate taxes, sales taxes and State income tax * * *." Bert Eugene Nickerson alleges that he is a resident and a taxpayer. We find no allegations in the complaint which would justify injunctive relief against the holding of hearings. Plaintiffs merely allege that, "Said hearings will entail expenditure of substantial time and money by the Board, by the plaintiffs and by members of the public who participate in said hearings." We cannot tell from these allegations what sums of money are actually involved or what expenditures the Board may make. We do not know if the doctrine of *de minimis* would be applicable here. See *Peoples Gas Light & Coke Co. v. Hart*, 310 Ill.App. 351, 357-358, 34 N.E.2d 88.

Furthermore, this taxpayers' argument loses sight of the fact that we are concerned here only with the issue of holding hearings by the Board. We are not concerned with the exercise of administrative power but merely with an administrative investigation to determine whether power should be exercised; and, if so, in what manner. The pertinent statute provides that the Board shall make rules and regulations in connection with recommendations by the Task Force. (Ill. Rev. Stat. 1971, ch. 111½, par. 1006.) This would seem to contemplate the holding of some hearings by the Board in connection with recommendations received by it from the Task Force. The Board is also generally authorized to conduct "* * * hearings as may be provided by rule." (Ill. Rev. Stat. 1971, ch. 111½, par. 1005(d).) The taxpayers have no right to prevent the holding of hearings by the Board.

We conclude that suit was prematurely filed and that the injunctional order was improvidently issued. The injunctional order is reversed and the cause remanded to the Circuit Court of Cook County with direction that it be dismissed without prejudice.

Order reversed and cause remanded with directions.

LYONS and STAMOS, JJ., concur.